VOROS, J udge
(concurmng)
€18 I concur in the result,. I agree with the majority that, on the facts before the jury, the instructional errors were harmless. I write to urge the legislature to' consider clarifying the defense-of-habitation statute and in particular its presumption of reasonableness,. See Utah Code Ann. § 76-2-405 (LemsNems 2012)
{19 (1) of 405 deﬁnes the defense of habitation. It consists of a single sentence of 157 words. The subsection's proviso specifies when deadly force may be uged in defense of one's habitation. Such foree may be used in either of two cireumstances. See id. § 76-2-405(1)(a) and (b). .
1T20 The first clrcumstance occurs when three elements are all present. See id. § 76- *54 2-405(1)(a). The first element includes three alternative sub-elements ("the entry is made or attempted in a violent and tumultuous manner, surreptitiously, or by stealth"). Id. The second element contains two alternative sub-elements, each of which includes two alternative sub-sub-elements (the defendant reasonably believes that the entry is either "attempted or made" for either "assaulting or offering personal violence to any person ... dwelling ... or being in the habitation"). Id. The third element requires only a single showing ("the force is necessary to prevent the assault or offer of personal violence"). Id.
{21 The second cirenmstance occurs when two elements are both present. See id. § 76-2-405(1)(b). The first element includes two alternative sub-elements ("the entry is made or attempted for the purpose of committing a felony in the habitation"). Id. The second element requires a single showing (the defendant reasonably believes "that the force is necessary to prevent the commission of the felony").
€22 The complexity of subsection 405(1) renders the defense of habitation difficult to apply in practice. By my calculation, subsection 405(1)'s one sentence creates 24 possible permutations for establishing the defense of habitation.
123 Subsection 405(2)'s presumption of reasonableness further complicates the analysis. See Utah Code Ann. § 76-5-405(2) (LexisNexis 2012). That subsection lists five facts that, if established, trigger the rebutta-ble presumption of two facts: (1) that the actor "acted reasonably" and (2) that the actor "had a reasonable fear of imminent peril of death or serious bodily injury" (the presumed facts). Id. The first presumed fact roughly correlates to the elements of the defense of habitation in subsection (1), which requires that the defendant acted while "reasonably believing" certain things. But if does not track the text of the defense of habitation as defined in subsection (1).
124 Similarly, the second presumed fact loogely correlates to certain elements of the defense of habitation, such as whether the defendant "reasonably believes" the victim entered for the purpose of "offering personal violence to any person" (whatever that means). But again, it does not track the text of any element of the defense of habitation and in fact seems aimed at establishing an element of the related-but nevertheless distinct-defense-of-person statute. See id. § 76-2-402(1)(b) ("A person is justified in using force intended or likely to cause death or serious bodily injury only if the person reasonably believes that force is necessary to prevent death or serious bodily injury to the person or a third person as a result of another person's imminent use of unlawful force, or to prevent the commission of a forcible felony.").
25 In short, subsection 405(1) creates a complex matrix of elements necessary to establish the defense of habitation, and subsection 405(2) creates a presumption that permits certain facts to be presumed, But the presumed facts only approximate, not duplicate, elements of the defense of habitation. For these reasons, I urge the legislature to consider amending this section to the extent it deems appropriate.
Of course, while legislatures enact statutes, courts apply them in live cases, and we have one before us. Like the majority, I believe the appeal turns on prejudice. Karr explicates well the flaws in Instruction 86--flaws that (I believe) derive from the defense-of-habitation statute's complexity as catalogued above. That said, Instruction 36 instructed the jury that "defendant is entitled to the presumption that his actions were reasonable." It then described how the prosecution could rebut that presumption. That description was, as Karr contends, wrong. I agree with Karr's contention that "to rebut the presumption of reasonableness under § 76-2-405(2), the prosecution must show that it was unreasonable for the defendant to believe that deadly force was necessary."
27 For reasons explained in the majority opinion, demonstrated in the State's brief, and apparent on the record, I conclude that the prosecution did show, beyond a reasonable doubt, that Karr could not have reasonably believed that deadly force was necessary here. Uncontroverted trial testimony estab *55 lished that Victim, after partying for some time, stepped out momentarily then stepped back inside to retrieve some liquor; that Karr quarreled with Victim, who was drunk; that Karr stabbed Victim outside on the porch; that Karr stabbed Victim, who was unarmed, seven times; that Brother restrained Victim during the stabbing; and that Victim did not resist In contrast, Karr's own version of events, as reported to police, evolved over time. First he said he was not present at the house where the stabbing occurred; then that he acted in defense of Brother; then that Victim attacked him with a knife; and finally that when he saw Victim go for Brother, he "snapped."
128 On this record, the instructional errors do not undermine my confidence in the jury's verdict. I accordingly concur in the result.